1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | CASE NO. 07-CV-0886 |
| Plaintiff, | **ORDER DENYING MOTION IN LIMINE (Doc. No. 103.)** |
| vs. | |
| 14.30 ACRES OF LAND, et al., | |
| Defendants. | |

On October 7, 2009, Plaintiff United States of America ("Plaintiff" or the "Government") filed a motion in limine seeking to exclude one of Defendants' experts. The Court decides the matters on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** Plaintiff's motion. [Doc. No. 103.]

I.    APPLICABLE BACKGROUND

On May 16, 2007, Plaintiff acquired a 14.30 acre parcel of land ("Property") in the southwesterly portion of San Diego through eminent domain. (*Compl.* at ¶ 1.) The

1  Property was condemned in order to carry out Congress's mandate to construct a secure
2  border fence. (*Id.* at ¶ 2.)  Indeed, the southern boundary of the Property is the actual
3  international border between the United States and Mexico. (*Compl.*, Schedule "C".)

4      Defendants Timothy Lichty and Sheryl Lee Lichty, co-trustees of the Tim and
5  Sherry Lichty Family Trust dated October 24, 1991 ("Defendants") are the former
6  owners of the Property, having purchased it in the 1970s.  As a result of the taking,
7  Defendants are entitled to compensation based on the fair market value of the Property
8  at the time of the taking.  The fair market value is determined according to the highest
9  and best use of the Property.  The parties disagree as to the Property's valuation at the
10 time of the taking.

11     The parties have been actively engaged in litigation for over two years.  A large
12 portion of that litigation appears to be centered around whether legal access to the
13 Property exists such that the highest and best use of the Property is residential
14 development.  On October 5, 2009, this Court denied cross-motions for summary
15 judgment and concluded that genuine issues of material fact exist regarding Defendants'
16 ability to access the Property. (Doc. No. 101 at 5.)

17     Plaintiff has now filed an in limine motion seeking to exclude the testimony and
18 report of Defendants' feasibility expert Thure Stedt ("Mr. Stedt"). (Doc. No. 103.)  On
19 October 21, 2009, Defendants filed their opposition to Plaintiff's motion. (Doc. No.
20 105.)

21

22 **III.   DISCUSSION**

23     Plaintiff asserts that Mr. Stedt's intended expert opinions are unreliable and
24 inadmissible under the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharm.,</u>
25 <u>Inc.</u>, 509 U.S. 579, 589 (1993) because they are based on erroneous legal assumptions.
26 Specifically, Mr. Stedt 'erroneously assumed' that: (1) legal access to the Property
27 absolutely exists; and (2) there is no legal obligation to improve the road leading to the
28 Property. (Doc. No. 103 at 3.)

1       In opposition, Defendants assert that Plaintiff is improperly attempting to "try

2  hotly contested issues" in the context of an limine motion. (Doc. No. 105 at 5.)

3  Defendants are willing to concede that if no legal access to the Property exists, Mr.

4  Stedt's testimony will be rendered moot. (Id. at n.3)  But since the issue of legal access

5  does still exist, Mr. Stedt's testimony maintains its potential value.  Further, Defendants

6  assert that Plaintiff's arguments concerning road improvements are subject to factual

7  disputes that must be determined at trial.  The Court agrees with Defendants.

8       Plaintiff relies heavily on United States of America v. 319.88 Acres of Land, for

9  the proposition that "[w]here opinion of an expert is based on erroneous assumptions

10  of fact or law, the evidence is incompetent and insufficient to support a verdict." 498

11  F. Supp. 763, 766 (D. Nev 1980).  In that case, the United States had similarly

12  condemned privately owned undeveloped land and was litigating its fair market value.

13  Id. at 764-765.  During trial, the defendant's expert testified that the land had

14  significant worth, in part, because he assumed a casino could be operated on the

15  property. Id. at 764.  The defendant was subsequently "taken completely by surprise"

16  when government counsel presented a regulation to the court—that had never been

17  introduced before—indicating that the operation of a casino on the subject property was

18  foreclosed by a National Park Service regulation. Id. at 764.

19       The trial court did not believe the issue could be resolved quickly but hoped to

20  salvage the jury's efforts in hearing the case.  Id. at 765.  Accordingly, with the

21  agreement of counsel, the trial court "submitted to the jury special interrogatories asking

22  the jury to find the fair market value of the subject property, assuming in one instance

23  that a gambling business could lawfully be placed on the premises and assuming in the

24  second instance that such a business was prohibited." Id. at 765.  Curiously, and for

25  reasons not solely connected to the expert testimony discussed above, the jury returned

26  identical verdicts, answering both interrogatories with the same higher-dollar amount.

27  Id. at 765.

28

1    In the subsequent motion for a new trial, the trial court had its first opportunity

2  to fully address the merits of the gambling prohibition.  It found that the National Park

3  Service had properly prohibited gambling on the subject property, and thus, the

4  defendant's expert's testimony had been based in part upon an erroneous assumption.

5  <u>Id.</u> at 771.  In light of that finding, the trial court concluded that the jury's verdict was

6  excessive because it was "not supported by competent, substantial evidence" and would

7  have to be set aside. <u>Id.</u> at 771.  In other words, because the <u>319.88 Acres</u> court was able

8  to foreclose the possibility of a casino as a matter of law, that issue should not have been

9  presented to the jury and had potentially tainted their verdict.

10    In contrast, no similar legal determination exists in the instant case.  As

11  mentioned above, this Court recently held that genuine issues of material fact exist

12  regarding Defendants' ability to access the Property. (Doc. No. 101 at 5.)  And because

13  this Court has been clear that a conclusive legal determination can not be made based

14  on the current record, Mr. Stedt's testimony is not presently based on any erroneous

15  legal assumption.  In stark contrast to the situation in <u>319.88 Acres</u>, Defendants may

16  still establish that legal access did exist, making Mr. Stedt's opinion relevant and of

17  potential value.

18    Plaintiff also contends that Mr. Stedt erroneously assumed that road

19  improvements would not be required before a residence could be built on the Property.

20  (Doc. No. 103 at 4.)   And this erroneous legal assumption, like the assumption in

21  <u>319.88 Acres</u>, also renders his opinion incompetent and "ripe for exclusion." <u>Id.</u> at 9.

22  In support of this contention, Plaintiff cites, among other things: (1) City of San Diego

23  Fire and Hazard Prevention Services Policy ("FHPS") A-00-1 Section IV, (2) deposition

24  testimony of Deputy Fire Marshall Robert Medan, (3) various portions of the California

25  Fire Code, (4) the opinion of their California Coastal Commission ("CCC") expert

26  Nancy Lucast, and (5) the expert report of Stephen Roach. (Doc. No. 103 at 4–9.)  All

27  of the evidence is designed to lead this Court to the conclusion that a residence could

28  not have been built on the Property without being required to improve the road, or in

the alternative, that road improvements would have been required but would not have been allowed by the CCC. (Id. at 9.)

In opposition, Defendants argue that factual issues exist concerning any potential road improvement, and thus, no determination can be made that would then serve to exclude Mr. Stedt. (Doc. No. 105 at 16.)  The Court agrees.

For example, Defendants have provided different portions of Mr. Medan's deposition than those provided by Plaintiff.  These additional excerpts potentially change the impact of Mr. Medan's opinion. (Id. at 8–10, 14.)  Defendants have also block-quoted large sections of the California Fire Code which provide exceptions regarding fire access that were seemingly unmentioned by Plaintiff. (Id. at 13.)

Thus, based on the current record, the Court finds that factual disputes exist that preclude a legal determination regarding road improvements.  And without a legal determination, this case is not similar to 319.88 Acres.  Neither Mr. Stedt's testimony or his report are presently based on an erroneous legal assumption and they will not be excluded.

## IV.    CONCLUSION

In light of the foregoing, this Court **DENIES** Plaintiff's motion in limine to exclude the testimony and report of Mr. Stedt. (Doc. No. 103.)

**IT IS SO ORDERED.**

DATED:  November 5, 2009

_____
Hon. Thomas J. Whelan
United States District Judge

-5-

07-CV-0886