UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>v.<br><br>14.3 ACRES OF LAND, more or less, situated in San Diego County, State of California; TIMOTHY LICHTY and CHERYL LEE LICHTY, CO-TRUSTEES OF THE TIM AND SHERRY LICHTY FAMILY TRUST DATED OCTOBER 24, 1991; and OTHER INTERESTED PARTIES,<br><br>                Defendants. | Civil No.07cv886- AJB (NLS)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' EXPERT'S REPORTS AND EXCLUDE RELATED TESTIMONY**<br><br>[Doc. No. 165] |

      Before the Court in the above-captioned matter is Plaintiff's Motion to Exclude the Second Supplemental Expert Report of Jeffrey Kauttu. [Docket No. 165.] Plaintiff requests that the Court find good cause to impose evidentiary sanctions pursuant to Federal Rule of Civil Procedure 37(c) against Defendants for alleged violations of court-imposed deadlines and the Federal Rules of Civil Procedure governing the exchange of expert reports. Defendants filed an opposition to the motion [Docket No. 169], and Plaintiff filed a reply [Doc. No. 170.] This is the third time that a motion to exclude a Kauttu report has been brought in this case. The Original Kauttu Report was timely submitted on January 25, 2008. On December 19, 2008, Defendants submitted a Supplemental Kauttu Report. On January 30, 2009, the Court Granted the Government's Motion to Strike the Supplemental Report. [Docket No. 78.] On February 3, 2011, the Court granted in part the Government's Motion in Limine Number 2, and

excluded a part of the Original Kauttu Report. [Docket Nos. 152, 154.] On April 26, 2011, Defendants submitted a Second Supplemental Kauttu Report. [Docket No. 165-2.] It is this Second Supplemental Kauttu Report that is the subject of the current motion to strike. The Court finds that the Motion is suitable for disposition on the papers submitted. For the reasons stated below, the Court **GRANTS** Plaintiff's motion.

## I. BACKGROUND

### A.     The Litigation

This action arises from the condemnation of 14.3 acres of land adjacent to the United States – Mexico border. On May 16, 2007, the United States government (Plaintiff in this case, hereafter "Government"), acting under the authority of the Department of Homeland Security Act, 6 U.S.C. §§ 111, 202, 251, and 557, took possession of Defendants Timothy and Cheryl Lichty's (hereafter "Defendants") property in south San Diego County in connection with the Border Fence project. (*See Decl'n. of Taking*, Docket No. 3, Schedules "A" and "C" attached.) At the time of filing the Declaration of Taking, the government deposited into the Registry of this Court the amount of Three Hundred Fifty-Eight Thousand Dollars ($358,000.00) as estimated just compensation for Defendants' condemned property. (*See Joint Motion for Disbursement of Funds*, Docket No. 6.) On October 17, 2008, the Government deposited supplemental estimated just compensation for taking the estate condemned, in the amount of Seven Hundred Eighty-Seven Thousand Dollars ($787,000.00.) [Docket No. 50.] Defendants do not challenge the statutory authority for the taking. The sole issue in this case is whether the previously disbursed funds constitute just compensation for the land.

The discovery period in this case began in September 2007 and closed on August 1, 2008. The parties focused their discovery efforts primarily on obtaining documentation and expert opinions regarding the fair market value of Defendants' land on the date of the taking. In November 2007, the Court issued a Scheduling Order setting discovery deadlines and other pretrial proceedings. [Scheduling Order, Docket No. 14.] The instant motion concerns the deadlines set for the exchange of expert disclosures. Paragraph 3 of the Scheduling Order provides as follows:

> Defendants' expert disclosures required by Fed. R. Civ. P. 26(a)(2) shall be served on all parties on or before ***January 31, 2008***. Plaintiff's expert disclosures required by Fed. R. Civ. P. 26(a)(2) shall be served on all parties on or before ***April 30, 2008***. Any contradictory or rebuttal information shall be disclosed on or before ***May 30,***

*2008*.

[Docket No. 14 at p.2.] (Emphasis in original).  This paragraph also references the duty to supplement expert disclosures pursuant to Federal Rules of Civil Procedure 26(e) and 26(a)(3) prior to the December 1, 2008 deadline set for pretrial disclosures, and emphasizes that failure to comply with these deadlines may result in the sanctions provided for by Rule 37, including the exclusion of evidence. (*Id.*)

**B.    The Original Kauttu Report**

The Original Kauttu Report estimated the value of the property at $6.2 million, based on a valuation of the residential component of the property at $5.2 million and a valuation of an additional $1 million for the coastal wetland mitigation component, consisting of 3.96 acres of degraded wetlands. Because this land is part of the Multiple Species Conservation Program, only 25% of the parcel can be developed and 75% of the parcel must be set aside and used solely for environmental mitigation.  SDMC § 143.0152; *see also* Stedt Depo, Consol Ex. 3.[1]  Accordingly, the report's valuation of the residential component is based upon 3.58 acres (25% of the 14.3 acres) available for residential development.

**C.    The First Supplemental Kauttu Report**

On December 19, 2008, Defendants issued the First Supplemental Report of expert witness Jeffrey Kauttu ("Kauttu").  The First Supplemental Report was served three weeks after the December 1, 2008 deadline for producing Supplemental Expert Reports and only days before the Pretrial Conference. The First Supplemental Kauttu Report was different from the original in two ways: 1) the valuation of the 3.96 acres of degraded wetlands was increased from $1,000,000 to $1,600,000; and 2) a mitigation valuation of $546,000 for the 6.83 acres of uplands was provided for the first time.  The First Supplemental Kauttu Report did not alter Kauttu's conclusion in the Original Kauttu Report that the best use is as mixed residential and mitigation, but it did increase the estimated value from $6.2 million to $6.8 million.  The Government moved to Strike the First Supplemental Report, asserting that it was untimely and should be excluded. [Docket No. 75.]  On January 30, 2009, the Court issued an Order

//

---

[1] "Consol Ex." refers to the Consolidated Declaration and Exhibits in support of the Government's Motions in Limine, Docket No. 110-8 - 110-11.  The San Diego Municipal Code, Land Development Code section can be found in Consol. Ex. 2.

Granting the Motion to Strike and Exclude Testimony. [Docket No. 78.][2]  The Court rejected Defendants' argument that the First Supplemental Kauttu Report was based on new information that, despite their best efforts, Defendants could not obtain until three days before the Final Pretrial Conference.  The Court found that the First Supplemental Kauttu Report was neither justified nor harmless and had to be excluded.

### D.  The Striking of Part of the Original Kauttu Report

The Government moved in limine to exclude the Original Kauttu Report based on a violation of the unit rule and other methodological errors.  On February 3, 2011, the Court granted, in part, the Government's Motion in Limine to Exclude Kauttu's valuation of the property because it violated the unit rule.  [Docket No. 152.]  The Court found that the Original Kauttu Report had improperly double counted the 3.96 acres of degraded wetlands as both for the sale of mitigation credits and as part of the 75% of the parcel that had to be set aside in order to develop the remaining 25% of the land.  Under the unit rule, "separately appraising individual components of value and adding them together to reach the whole value is a piecemeal approach which can easily result in double-counting and is impermissible." *U.S. v. 6.24 Acres of Land*, 99 F.3d 1140, 1144 (6th Cir.1996), *quoting United States v. 2,175.86 Acres of Land*, 687 F.Supp. 1079, 1088 (E.D. Tex.1988);  *see also United States v. 8.41 Acres of Land,* 680 F.2d 388, 395 (5th Cir.1982)(valuation of separate interests cannot exceed the worth of the whole.)  Judge Houston found an impermissible double counting in the Original Kauttu Report because it counted the 3.96 acres of degraded wetlands as part of the 75% set aside **and** as a separate value by sale of mitigation credits.

The Court ordered the exclusion of all evidence relating to the $1 million valuation of the mitigation value of the 3.96 acres degraded wetlands, but did not exclude the $5.2 million valuation of the mesa top (intended for a residential use).  Specifically, the Court held:

> In plaintiff's motion in limine no. 2, plaintiff moves to exclude the testimony of Mr. Kauttu, the defense's expert.  The motion is granted in part and denied in part.  The motion is granted with respect to the expert witness' valuation pursuant to the unit rule valuation.  This includes preclusion of the one million dollars for the four acres of land, wetlands.

//

//

---

[2] The January 30, 2009 Order also granted a Motion by the Government to Strike the Expert Designation, Expert Report and Testimony of Deborah Rosenthal, an expert on the California Coastal Commission.

4

[Docket No. 156, Transcript of Hearing at 89:15-25.][3]

### E.   The Second Supplemental Kauttu Report

On April 26, 2011, Defendants served the Government with a Second Supplemental Report by Mr. Kauttu, stating: "This supplemental report was prepared to deal with Judge Houston's ruling relating to Mr. Kauttu's appraisal at the conclusion of the motion hearing on February 3, 2011." (Norris Decl. in support of  Mtn to Strike, (hereinafter "Norris Decl.") at Ex. 1.)  The Second Supplemental Kauttu Report values the property at $5.9 million, a new number.  Mr. Kauttu reaches this appraisal by employing a new methodology for the first time: he separates the 3.96 acres of degraded wetlands from the residential component.  Thus, the Second Supplemental Kauttu Report finds that 10.34 acres are available for residential use, of which  2.58 acres are available for development.[4]  The Second Supplemental Kauttu Report then finds that the reduction in area available for development  from  3.58 acres to 2.58 acres decreased the value of the residential component by $300,000, resulting in a valuation of $4.9 million. The Second Supplemental Kauttu Report also reinstates the stricken $1 million valuation of the mitigation credits, resulting in a total valuation of $5.9 million, $700,000 more than the Original Kauttu Report.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the disclosure of expert testimony.  Rule 26(a)(2) provides that a party must disclose to other parties "the identity of all expert witnesses who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."  Rule 26 adds:

> Unless as otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report-- prepared and signed by the witness . . . .  The report must contain a complete statement of all opinions the witness will express and the basis and reasons for them.

Fed. R. Civ. P. 26(a)(2)(B).  With respect to the timing of expert disclosures, Rule 26(a)(2)(c) provides:

---

[3] For the sake of convenience, the  parties addressed the 3.96 acres of degraded wetlands as "four acres."  *See* Docket No. 156, Transcript at p. 5.

[4]  The total land condemned is equal to 14.3 acres.  Subtracting the  3.96 acres leaves 10.34 acres.  Twenty-five percent of 10.34 is equal to 2.58.

"A party must make these disclosures at the times and in the sequence that the court orders." Rule 26(e)(2) governs the supplementation of expert reports. It provides, in pertinent part:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2). "Although Fed. R. Civ. P. 26(e) requires a party to 'supplement or correct' a disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report. . .." *Lindner v. Meadow Gold Dairies*, *Inc.*, 249 F.R.D. 625, 635 (D. Haw. 2008) *quoting Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003) (citation omitted). Similarly, a "party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report." *Medtronic Vascular, Inc. v. Abbott Cardiovascular Systems, Inc.*, 2008 WL 4601038 at *1 (N.D.Cal. Oct. 15, 2008). Supplementation "does not cover failures of omission because the expert did an inadequate or incomplete preparation. To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek havoc in docket control and amount to unlimited expert opinion preparation." *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C.2002) (citations omitted.).

Parties who run afoul of Rule 26 may face sanctions as specified in Federal Rule of Civil Procedure 37, which provides in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). The exclusion sanction is "self-executing" and "automatic." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (referencing the Advisory Committee's Notes to Rule 37(c)(1) (1993 Amendments)). However, "[t]wo express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the party can prove that its failure to disclose the required information is substantially justified or harmless." *Id*. at 106-07 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness.") The Ninth Circuit

"give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Id.* The following factors are used to guide the court's discretion: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

### III. DISCUSSION

The Government seeks an order from the Court imposing evidentiary sanctions against Defendants for the untimely submission of the Second Supplemental Kauttu Report. As described above, the Court has previously addressed this same issue in relation to the First Supplemental Kauttu report. As before, the late report will only be allowed if it is substantially justified or harmless. As described below, the Second Supplemental Kauttu Report is neither substantially justified nor harmless.

**A.    The Second Supplemental Report Is Not Substantially Justified**

1. <u>Adverse Court Ruling is Not Justification for Supplementation</u>

It is undisputed that the Second Supplemental Kauttu Report was issued in response to Judge Houston's Order Granting in Part the Motion to Strike the Original Kauttu Report. Norris Decl. Ex. 1. An adverse ruling is not justification for presenting a supplemental report. *See La Gorce Palace Condo. Assoc., Inc. v. QBE Ins. Corp.*, 2011 WL 1522564 at *2 (S.D. Fla. Apr 12, 2011) (rejecting as improper attempt to supplement one expert report with stricken reports of other experts). Supplementation is designed to allow "a party to correct inadvertent errors or omissions. Supplementation, however, is not a license to amend an expert report to avoid summary judgment." *Gallagher v. Southern Source Packaging, LLC*, 568 F.Supp.2d 624, 631 (E.D.N.C. 2008), *citing Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M.2003).

In this case, the Government moved to exclude the $1 million valuation of the 3.96 acres of degraded wetlands, arguing that the proffered expert testimony was not reliable under *Daubert v. Merrel Dow Pharm., Inc.* 509 U.S. 579, 589 (1993). Judge Houston agreed and excluded the testimony relating

//
//
//

to the $1 million valuation.[5] Defendants want this Second Supplemental Report in order to correct the deficiency of double counting the 3.96 acres. This is improper. *See Snoznik v. Jeld-Wen, Inc.*, 2010 WL 1924483, 71 UCC Rep.Serv.2d 747 at *8-9, (W.D.N.C. May 12, 2010) (Supplemental Report improper where done to bolster report to withstand Daubert challenge).

Defendants argue this case is similar to *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1010 (9th Cir. 2004). Defendants' reliance on Childress is mistaken. By Defendants' own characterization of *Childress*, the court allowed a late supplementation where the party seeking to exclude the report had caused the delay by failing to produce relevant documents in discovery. Defendants claim this case is similar because they produced the Second Supplemental Kauttu Report shortly after receiving the adverse ruling from John Houston. In this case, the Government did not withhold any documents or in any way prevent Defendants from producing a report that included the valuation now put forth for the first time. Accordingly, *Childress* is inapposite. Simply put, Defendants made a decision not to include this alternate theory in the Original Kauttu Report and cannot now be heard to argue that they should be insulated from the consequences of their choice.[6]

## 2. Motion in Limine Number 8 Does Not Provide Justification

In motion in limine number 8, the Government argued that any testimony about the valuation of two separate parcels should be excluded because the Defendants had not submitted expert testimony proving that the separation into two parcels was legally permissible. Judge Houston denied the motion

---

[5] Defendants also argue that Judge Houston did not strike the $1 million valuation, "but only found that the Lichtys' [sic] would not be permitted to present evidence of the fair market value of a 4 acres parcel of the Lichty property **as part of the residential property**. The February 3, 2011, [sic] ruling left all of the other alternatives available." (Opp. at 8.)(emphasis in original.) As quoted more fully earlier in this Order, Judge Houston stated: "This includes preclusion of the one million dollars for the four acres of land, wetlands." Judge Houston nowhere allows the one million dollar valuation and nowhere limits the exclusion of the testimony to "as part of the residential property."

[6] Although Defendants do not specifically argue that the Second Supplemental Report is justified under Rule 26(e), the court will address this issue briefly in the interests of completeness. Rule 26(e) sets forth a duty to supplement, not a right to supplement at will. "Duties are usually owed to other people, and are not for the benefit of the party who has the duty." *Sandata Technologies, Inc. v. Infocrossing, Inc.*, 2007 WL 4157163 at *7 (S.D.N.Y. Nov 16, 2007) (rejecting untimely supplemental report that benefitted only the party producing the report.); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga.2001) ("In short, Rule 26 imposes a *duty* on Plaintiffs; it grants them no *right* to produce information in a belated fashion.") Because, as discussed fully below, the Second Supplemental Report benefits only the Defendants, it is not proper supplementation under Rule 26(e).

without prejudice. Defendants first argue that the existence of this motion proves the Government has known about this issue. Defendants appear to equate the Government's attempt to exclude the testimony as unsupported, with a right on their part to produce new evidence on the topic. This equation does not compute. Defendants next argue that Judge Houston's denial of the motion without prejudice leads to the inescapable conclusion that Defendants have a right to produce new expert testimony. Defendants fail to produce any support for this proposition and the Court can conceive of no logical support for this proposition. Judge Houston found: "the appropriate manner to handle this is a denial without prejudice." [Docket No. 149, Transcript at 51:6-8, 17-20.] Judge Houston continued: "I can determine best whether or not there is anything in the reports as we go through the trial process, through the flow of the trial, as to whether or not evidence should be precluded or not at that juncture." [*Id.* at 51-52.] Judge Houston merely found that it would be best to see whether testimony was supported by expert opinion in the reports at a later date. Defendants' attempt to bootstrap this statement into a right to produce new expert opinion at a later date is simply not supported by the record.

### B. The Supplemental Kauttu Report is Not Harmless

#### 1. The Second Supplemental Report Increased the Valuation by $700,000

Defendants claim that the Second Supplemental Kauttu Report is a benefit to the Government because it lowers the estimated value of the residential component by $300,000. The Second Supplemental Kauttu Report, however, also reinstates the stricken $1million for the mitigation component, resulting in an estimate that is $700,000 higher than the original Report. Because the new estimate is $700,000 higher and based on a new methodology, it is not harmless. As the record stood prior to the Second Supplemental Report, the Defendants' estimate of the value of the property is $5.2 million dollars. The estimate in the Second Supplemental Report is $5.9 million. Because $5.9 million is higher than $5.2 million, the report is not harmless. Moreover, Defendants' argument that the report is harmless must fail because it is internally inconsistent. Defendants argue that the Government would not be prejudiced by an increase in the alleged value of the property, but that they would be prejudiced if they are not allowed to offer a new (and higher) valuation. Defendants cannot have it both ways. A higher valuation cannot be both non-prejudicial to the Government if allowed and  prejudicial to Defendants if excluded.

### 2. Prior Statement of Possibility of New Method Does Not Negate Prejudice

Defendants also argue that the Government has suffered no prejudice because Defendants have long expressed an interest in producing a valuation that would split the 14.3 acres into two parcels. Defendants point to deposition testimony of Mr. Kauttu in which he states that it is possible that the wetland component could be sold separately. (Kauttu Depo. Tr., Quinton Decl., Ex. A at 32-35.) Defendants also argue that the Pretrial Order lists whether this separation would be possible as an issue of law to be decided. (Pretrial Order, Docket No. 74, pages 26, 28).

Defendants' argument appears to be that their long expressed intent to possibly produce a valuation of the property as two separate parcels entitles them to produce a new opinion. An expressed desire is not, however, a legal entitlement. An Order listing an issue to be decided does not bestow the right to offer new and untimely expert testimony at a later date. The fact that the Second Supplemental Kauttu Report addresses an issue in the Pretrial Order does not address the issue of whether the Second Supplemental Kauttu Report is timely, justified or harmless. In fact, Defendants' argument works against them. Defendants admit that they have long been aware that they might need expert opinion on this topic, but do not explain any reason why they have failed to produce the opinion during the years they have known that they might need it.

Similarly, Defendants argue that the Government knew that if Motion in Limine Number 2 were granted, Defendants would seek to offer a different valuation. Again, Defendants put forth no authority for the conversion of their stated intent into a legal entitlement. The question is not whether Defendants had expressed an intent to produce new evidence later, but whether the Government is harmed by the late presentation of a new expert opinion.

Defendants next argue lack of prejudice because, as of the time Motion in Limine Number 8 was denied, "the Government was advised that the Lichtys would be able to present evidence that the 4 acre mitigation parcel as an [sic] separate entity, such as environmental mitigation." (Opp. at 21.) This argument lacks merit for at least two reasons: 1) as described above, the denial of Motion in Limine Number 8 was without prejudice; and 2) at most, Defendants were justified in believing that they would be able to offer expert opinion based on the expert reports already submitted, not based on a report that had not yet been presented. In short, Defendants' argument that the Government will not be prejudiced

because it should have been prepared to counter an opinion that Defendants had not produced is not persuasive.

### 3. New Opinion Would Require Additional Discovery and Trial Preparation

The Government argues that the Second Supplemental Kauttu Report cannot be harmless because, if forced to respond, it will have to: 1) reopen discovery; 2) have experts review the Second Supplemental Report; 3) have experts draft responsive reports; and 4) prepare its experts for new depositions. Defendants counter that the Government's case rests upon the argument that no residential use is possible and, therefore, the trial preparation would remain unchanged. This analysis misses the point. Any litigant has an interest in not only asserting its own arguments, but also in negating the arguments of the other side. Defendants do not merely put forth a new number, they assert a new methodology. Additionally, the Second Supplemental Kauttu Report includes three new properties to support the new valuation of the residential component. Defendants argue that these properties are not offered as comparable sales, but merely for the "limited" purpose of validating that 2.58 acres could support a residence with the amenities included in the valuation. Defendants do not explain why the Government would not have to rebut the evidence. In fact, the Government, if forced to respond, would have to show why the new opinion should not be accepted. In order to do this, as the Government points out in its Reply Brief, their experts would need to investigate the three new properties in order to determine if the Second Supplemental Kauttu Report accurately represented and analyzed them. Additionally, the Government experts might need to issue their own supplemental reports, which might require additional discovery. Accordingly, Defendants are simply in error when they assert that the Government's trial preparation would not be affected by the new opinion in the Second Supplemental Kauttu Report.

Finally, the late supplementation occurred after the close of discovery, two years after the pre-trial conference and after motions in limine had been heard. Accordingly, as the Government argues, if the late supplementation is allowed it would disrupt the Government's trial preparation and increase expert costs and litigation expenses. Therefore, the Second Supplemental Kauttu Report is not harmless.

//

//

### C. Wendt Factors Favor Exclusion

In sum, the Supplemental Report is neither justified nor harmless, creating a great risk of prejudice to the Government. Additionally, because the Final Pretrial Conference has already been held, the Court's interest in managing the docket and the public's interest in expeditious resolution lead inescapably to the conclusion that this aging case must be adjudicated as soon as possible. Finally, no lesser sanction is appropriate at this late date. Only exclusion of the untimely, unjustified and harmful report can alleviate the prejudice to the Government. Accordingly, the Motion to Exclude the Second Supplemental Kauttu Report is GRANTED.

## IV. CONCLUSION

Based on the foregoing reasons, **It Is Hereby Ordered** that: the Motion to Exclude the Second Supplemental Kauttu Report and related Expert Testimony of Kauttu is GRANTED.

**IT IS SO ORDERED**.

DATED: June 10, 2011

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court